Adams and Alexander v. Gleaves and Cauthon.

HARVEY ADAMS and THOMAS B. ALEXANDER *et al. v.* JAMES W. GLEAVES and J. P. CAUTHON, Ex's. of Guy T. Gleaves *et al.*

1. CO-ADMINISTRATORS. *Cum testamento annexo. Liability.* While co-administrators with will annexed are jointly and severally liable to a legatee for payment of legacies, yet on bill filed by the legatee, a court of equity will hold the one actually receiving the assets primarily liable, before the other who has not received them—the one receiving not being shown insolvent nor the other to have joined in any misappropriation.

2. SURETIES. *Guardian.* Sureties of a guardian are entitled to be subrogated to all the remedies of the ward against their principal, even before payment, where their principal is insolvent, but they stand no higher than the ward, and must take such remedies precisely as the ward had taken.

3. EXECUTOR. *Payment to himself as guardian* Where a party is executor, after the period when he should by law have settled his executorship is appointed guardian of minors, to whom his testator was liable for a legacy, and as administrator of another party with will annexed, charges himself and credits himself as executor, with the amount going to his wards, and charges himself with the amount in his hands in his report of ward's estate to the county court, this is sufficient to

charge his sureties on his guardian bond with the fund, notwithstanding there was no actual transfer of any money, this being impossible, as the party bound to pay, was the party who was to receive.

4. SURETIES. *Guardian.* Sureties of such guardian have no rights as against the administrator with the will annexed, surviving the executor of his co-administrator, who had the fund, being the guardian of the legatees, and having accounted for the fund, as above stated.

## FROM WILSON.

Appeal from the Chancery Court at Lebanon. H. H. LURTON, Ch.

TARVER & GOLLIDAY for complainants.

JORDAN STOKES for defendants.

FREEMAN, J., delivered the opinion of the court.

W. C. Baird died in Wilson county, giving by his will a legacy to his then grand-children, Ben, Jesse and Micah Gleaves, which on settlement of his estate amounted to between four and five thousand dollars. Another grand-child, daughter of Z. A. Baird, shared equally his personal estate.

Guy T. Gleaves and Z. A. Baird were the administrators, with the will annexed, of said W. C. Baird. Guy T. Gleaves died some years after his appointment, and before the estate was finally settled, or legacies paid. J. W. Gleaves and J. P. Cauthon were appointed and qualified as his executors by the county court of Wilson county, at December term, and gave bond in the sum of $15,000, with sureties, and a renewal bond in 1871, with other sureties.

Guy T. Gleaves, the co-administrator of Z. A. Baird, as administrator, at his death had in his hands the sum of $2,908.86, assets by him collected, and owed the estate of his testator the sum of $177.72, making the total sum for which he was accountable to that estate, for the benefit of creditors and legatees, the sum of $3,086.68.

This bill was filed by Adams and Alexander, sureties of J. W. Gleaves, on his bond as guardian of two of the Gleaves children, September, 1873, stating substantially the above facts, and adding, among other things, that J. W. Gleaves had breached his bond as executor, by *devastavit*, in misusing the funds of the estate of Guy T. Gleaves, claiming that a settlement and certain receipts were not sufficient to charge the guardian's sureties for the wards' funds, as no money was paid, and concluding with a prayer that the receipts be vacated and held for nothing, and Baird and the estate of W. C. Baird, be held liable for the whole amount; and also, that J. W. Gleaves, and his co-executor, Cauthon, and their sureties upon their bonds, be held liable for the $3,086 included in the receipts due from the estate of Guy T. Gleaves.   This was based on the idea that these parties were bound first on the facts charged, and thus the sureties on the guardian bond should be exonerated from liability for this fund.

In the meantime, before this bill had proceeded far, by a proceeding in the county court, J. W. Gleaves was removed as guardian of the two minors, and James Hamilton appointed in his stead.   Micah, the female ward,

having some time before intermarried with one Tabler.

In April, 1874, Hamilton, as guardian of Ben and Jesse, filed his bill in connection with Tabler and wife, against J. W. Gleaves, former guardian, and Adams and Alexander as his sureties, to recover the fund due from the guardian to the wards, Ben and Jesse Gleaves and Micah, the wife of Tabler.

Thereupon, very soon after, Adams and Alexander filed an amended and supplemental bill, stating the facts of the original bill, and the other facts referred to above, and complain of this conduct on the part of Hamilton, and insist he ought to have proceeded to adopt the bill they had filed, and prosecute the same, asking the court to force them to do so.

They ask further, that the bill of Hamilton and his wards be consolidated with them, and if there should be a recovery against complainants on their bond, as sureties of J. W. Gleaves, as guardian, for any part of the money covered by the receipts, that they have judgment over against any parties to their bills who might be liable to them for the same. They specially ask that Z. A. Baird, and the estate he represents, be held responsible to them, and in exoneration of their liability on the bond, together with the other parties named.

There was no demurrer, we believe, to this bill, and after answer, the cases all seem to have been heard together and decreed on, as if one suit. We may remark here, that while there may be cases when a party may be compelled to prosecute his suit in exoneration of another, this is not such a case. The

matter of the receipt of the money, so far as the fact whether the sureties of the guardian were responsible for the sum represented by them, was matter of defense, and might have been shown, to meet the charge of responsibility for that sum as actually received.    If he was to be charged because it was a fund, he could by proper diligence have received, then his neglect would charge him any way, and so the bill was unnecessary, so far as this feature was concerned.    The real equity sought to be asserted, however, is to have either J. W. Gleaves and Cauthon as executors of Guy T. Gleaves, and their sureties, or Z. A. Baird, as surviving administrator of W. C. Baird, held responsible either in exoneration of the sureties on the guardian bond, or held by way of subrogation, for the benefit of these last sureties.

In addition to the above it is proper to state, that Adams and Alexander, as sureties on the guardian bond, seem to have obtained two notes for upwards of $397 each, from J. W. Gleaves for their indemnity, both given for real estate.    Hall and Cutler, two sureties of Gleaves, had attached certain property in Davidson county.    Some dispute seems to have arisen between the two sets of sureties, when by consent and by way of compromise, an agreed decree was entered, by which Adams and Alexander gave up one of the notes, and were allowed to share *pro rata* in the recovery that might be had.    Their claim was for the fund by way of indemnity for liability on the guardian bond—they claiming the liability to be $4,300.

The case of Hamilton, guardian, and his wards,

seems to have been decided or discontinued, as of May 6, 1877, in which the chancellor gave a decree for over $4,300 against Gleaves as guardian, and his sureties, Adams and Alexander, ascertaining the amount due each of the parties. He decreed this sum on the basis of the amount shown by Gleaves in his guardian settlement to have been by him received. This was the sum covered by the receipts—less some expenses and payments to Mrs. Tabler.

The decree in the present case bears date May 7, 1877, two days after the former one, but the cases were heard together.

The chancellor, on the above facts, finds that the wards of Gleaves, now of Hamilton, were entitled to recover the $3,086.65 from Z. A. Baird, the surviving administrator of W. C. Baird, and J. W. Gleaves personally, and then, that Hamilton and his wards were entitled to recover as decreed in the Hamilton case before stated, of Gleaves and his suretis, to-wit, $4,415.

He then proceeds to adjudge, that the passing of the receipts was not a collection of the fund from Baird's surviving administrator, and could not discharge the debts of the two estates, because no money was actually paid on this basis; he adjudges that the right of the minors to sue Baird and recover the $3,086.65 was unquestionable, and then decrees that the sureties, Adams and Alexander, were entitled, by way of subrogation, to the rights of the wards. He then gives a judgment against J. W. Gleaves individually, as stated above, and Z. A. Baird, as administrator of W. C. Baird, for the use of Hamilton, as guardian, and

also for Tabler and wife, for the respective amounts of the gross sum due to each, on a score of a breach of trust and misappropriation of this fund.

He directed that a satisfaction of this decree by Baird, should operate as a credit on the decree of Hamilton and his wards in that case.

In addition, the sum received by Alexander and Adams, by way of indemnity in the Hall and Cutler compromise decree to be applied to the indemnity of the sureties as to the balance paid Gleaves in money by Baird, to the exclusion of the liability decreed as to the $3,086.

The original and amended bill in the case was dismissed, as against the sureties on the two bonds of J. W. Gleaves and Cauthon, executors of Guy T. Gleaves, and no relief decreed against the estate of said co-administrator of the estate of W. C. Baird. From this decree Z. A. Baird alone has appealed in error to this court. .

It is seen from this statement, that the chancellor has gone on the theory, that Z. A. Baird, as surviving administrator of W. C. Baird, was primarily liable to the wards in the first place for payment of their legacy, and that J. W. Gleaves was liable as participant in a breach of trust, in passing and accepting the receipts; and that he, Baird, is on this footing also primarily liable to pay in exoneration of the sureties on the guardian bond, on the principle of subrogation the entire amount settled by the receipts between Z. A. Baird and J. W. Gleaves, as administrator and guardian.

This is done with all the parties before the court, and that this was the view of his Honor is further shown conclusively, by the fact that he makes no decree whatever against J. W. Gleaves and Cauthon, executors, representing the estate of the co-administrator, Guy T. Gleaves, but dismisses the bill as to this estate.

It is assumed, in argument, that there was fraud committed on these children—a wrong done purposely, and a conversion of a trust fund, which renders the administrators, Z. A. Barid and G. T. Gleaves, liable under the principle of *Davidson* v. *H. C. Chrisp* (Jackson April Term, 1874). That case, while it went to the full extent of the law in favor of the sureties, was properly decided, but was a very different case from the one now before us. The guardian had received money on a life policy on the father, as the funds of his wards. Certain creditors of the father induced him to appropriate this fund to the payment of debts of the father held by them. It was charged to have been, and so shown, a fraudulent misappropriation of the funds, and the sureties of the guardian when sued for an account—the guardian being insolvent—asked to have this fund thus fraudulently converted, collected and appropriated to their exoneration, which was done by this court.

The principle applied was, that the sureties were entitled to all the remedies for his indemnity, that the creditor—the wards in that case—might have enforced in their own favor, the guardian being insolvent. The money was decreed to be collected from the par-

ties who had fraudulently obtained it, and applied to their exoneration, before payment on their part. This was all well.

While the principle is a sound one in its application to the rights of the sureties in this case, the facts are very different. There has been no receipt of the ward's money from a guardian here—no fraud—no conversion—no money was received by Z. A. Baird not accounted for by him, none of the $3,086 was paid over by him, either rightly or wrongly, to the guardian, or to any debts of the ancestor of these children. The only money paid was the $1,300, or more, balance due from W. C. Baird's estate, after deducting the amount that had been in the hands of Guy T. Gleaves, his co-administrator, the father of these children, and which was then due from his estate in the hands of his executors, to the wards, and which they were bound to account for and pay over, either possibly to Z. A. Baird, surviving administrator, or to the legatees, certainly.

The facts given in the answer of Z. A. Baird, and his testimony, conclusively repel all charges of fraud, or any malversation on either his own or the part of Guy T. Gleaves, his co administrator.

By the will of W. C. Baird, the residue, perhaps, of his personalty, was given to his four grand-children; one the infant daughter of Z. A. Baird, and three infant children of Guy T. Gleaves. He says, in view of this, each collected and retained in his hands something like the proportionate share coming to their respective children. When a settlement was had by him,

after the death of Guy T. Gleaves, it was found the sum in his hands was then $3,086. J. W. Gleaves was his active executor and had been appointed guardian of the children, and it was suggested by the clerk of the county court, that the receipts should be given, J. W. Gleaves having become, at that time, the guardian of the children, as the best mode of settling the matter, and it was done. He denies any knowledge or suspicion that J. W. Gleaves was insolvent, but says he understood him to be then a prosperous business man. The estate of Guy T. Gleaves was amply solvent and good for the amount due from Guy T. Gleaves. There is not a scintilla of testimony to disprove this denial, or sustain the charge of knowledge of insolvency or waste of the estate of Guy T. Gleaves by J. W. Gleaves, and the case fails as to all these charges.

The principle stated in the case of *Davidson et al* v. *Chrisp et al*, may be assumed as the basis, or certainly as embodying the general rule governing the rights of sureties; that is, they are entitled to such securities and remedies as their principal would have been able to enforce himself, for their indemnity or exoneration, in a proper case for the latter's relief.

This principle, however, must be applied with this qualification, or explanation, as necessarily implied in the very statement of the rule itself, that is, they cannot rise higher than their principal in right; in other words, must stand in his shoes, and take his remedies, with all the equities and limitations existent against him.

These settled principles kept in view, the question is, had the wards, by themselves, or guardian, filed their bill to enforce the payment of their legacy, making both the surviving administrator and the representatives of the dead administrator, parties, what would have been the equity administered by a court of chancery on the facts stated in this case? We now leave out of view the fact of the receipts entirely.

It is certainly true, that at law the executors are jointly and severally liable, their bond being joint for each other in the performance of the trust undertaken by them, our statute making all parties jointly and severally liable on what at common law would have been simply joint undertakings. And so they have been held jointly liable, and both so chargable as principals, in favor of their sureties, and each bound and liable to pay primarily before the *sureties* in case of misapplication of the funds of the estate, in exoneration of the sureties: *Hughlett* v. *Hughlett*, 5 Hum., 462. And so in *Bostick et al* v. *John Elliott et al*, 3 Head, 507, it was assumed they were jointly liable to legatees for *devastavit* of one of them, but at the same time it is implied very clearly from the language of the judge delivering the opinion, that it was primarily the responsibility of the one actually guilty of the waste. He saying: "Under the circumstances, they would be jointly bound to make it good, unless Elliott, who had committed the waste, had done so." This point was not probably the one in judgment, however, in that case, and so not considered.

The distinction was taken, and the principle gov-

erning the cases settled, at an early day by this court, between the liability of co-trustees in the case of directory and discretionary trusts under a will. In the first they were held jointly liable for performance of the trust, because all were bound to see that these directions were faithfully executed; but in discretionary trusts, the general rule was held to be, each was alone responsible for his own exercise of discretion, and only responsible for the acts of the other by neglect of an active duty or participation in the wrong done, or express or implied assent to the same: *Deadrick* v. *Cantrell,* 10 Yer., 263. See also Perry on Trusts, sec. —.

We have not the will of W. C. Baird before us, so as that its terms may be definitely known, but it is shown by his will these then grand-children were entitled to share in his estate, and that on settlement the sum of $4,444 was coming to them. We must treat the case as simply one, where by the will the personal estate is to be paid over to designated legatees in defined proportions, which would bring it under the principle of a directory trust for which both might be held responsible to the legatees.

Asssuming this to be true, it does not follow, however, that when all the parties are before a court of equity, that no equities will be looked to, as between the co-representives, nor priorities allowed, if right should so demand, and a simple joint decree necessarily rendered in every case in favor of the legatee, much less that one shall be held solely liable in a court of equity as has been done in this case. When such equities exist as between the co-trustees as can

be administered without detriment to the right of the beneficiary to receive his money, unquestionably they should be enforced.

This principle is recognized in the case of *Hughlett* v. *Hughlett,* 2 Hum., 462, in favor of the sureties. While they were already liable ·to make good the default of their principals to the devisees or legatees, yet that liability was secondary in equity to that of the principals, and the principal's property required to be exhausted before going on the sureties.

The principles on which a court of equity proceeds in precisely such a case as this are well given by Judge Ruffin in the case af *Bratten* v, *Bateman,* 2 Devrx. Eq. R., 118, 119. In that case a decree had been rendered against the estate of one of the executors alone, the other's estate not having been shown to be insolvent, the assets not having been, in fact, in the hands of the one decreed against. Judge Ruffin said :- "The decree has been pronounced upon the idea that as the administration had been jointly conducted, the executors were liable for each other's acts, and being so, the legatee had the right to proceed jointly and severally against them, upon the footing of contracts at law. The first part of the proposition is correct,. but the last is not the rule of this court. The course here is to do exact justice between all persons concerned; and hence, when two are liable, in general both must be before the court, and in *all* cases, he who is primarily liable—against him must be the decree for primary payment." For instance, he says :. "Equity may decree against a surety, but never that

he pay the debt in the first instance, nor even jointly with his principal, but only that if the creditor cannot raise it from the latter, then he may from the former. So, as between co-executors, they may be jointly liable at law, but never so here: that is absolutely. In this court each is liable for what is in his own hands. It is true he may be liable for what is in the hands of the others, but not jointly. He is not liable for the estate as if in his own hands. He is only responsible for the other, and *after* him." He adds, substantially, it is manifestly unjust that he should pay, while the one who has the funds in his hands is well able to pay. Should he do so, he would then have to commence a new litigation to reimburse himself, or we add, at most have a decree over for his reimbursement, all being parties. Why not adjust the equities as the right of the case demands, in one litigation, and by one decree? No conceivable reason can be given why this should not be done. These views are so consonant to practical justice, and the natural equities, as well as sound, legal logic of the case, that we unhesitatingly adopt them.

The surviving administrator in this case has been guilty of no fraud or wrong. The fund has not been wasted by his co-administrator, but safely kept in his hands till his death. It was rightly in his hands. He had as much right to receive it as the other. It was as much his duty to collect the assets as it was the duty of his co-administrator. These duties and rights were co-extensive with each other in this respect. There can be no reason why the one shall be held

solely liable to account primarily, and have the entire
assets charged on him, when in no default, while the
other remains able to meet the obligation, even where
there has been an actual misuse of the fund on the
part of the co-administrator, much less should this be
the case, when there has been no *devastavit* and no
wrong of any kind, only a liability to account. Why
not each account for what he actually and rightfully
has in his hands? This is in accord with sound justice,
and the general analogies of law as administered in a
court of equity, as contradistinguished from the rule at
law. "At law, the *administrator*, to the extent of
assets in his hands, is treated as the debtor, but in
equity the *assets* are treated as the debtor," or in other
words, as Judge Story says, "as a trust fund, to be
administered by the executor for the benefit of all
persons who are interested in it, whether they are
creditors, legatees, or distributees or otherwise inter-
ested according to their relative priorities, privileges,
and equities": Story Eq. Jur., vol. 1, sec. 479. This
being so, an account fairly taken of the fund, and a
decree against the party holding it is the legitimate
and proper result to be had, while that party is able
to respond and pay such decree.

We do not see that this result can be changed by
the fact that the co-administrator has died with the
funds in his hands, It was a fund he was liable to
account for. His executors taking his place are liable
to respond to this obligation—being before the court—
the estate amply solvent—ample assets coming to their
hands, and their sureties being good, why shall they

not be held to account and pay over precisely as their testator would have been, and if they failed to apply the assets to discharge · this obligation, why should not their sureties be held to make good their failure? It is true these executors have nothing to do with the estate, as such, of W. C. Baird, but their testator had ·these funds, and was bound to account for them, and his representatives must respond to the obligation personal which had been fixed on him in his lifetime, nothing else appearing in the case, exonerating them from this duty. This would seem clear. They cannot keep this fund and account to no one for it.

Suppose Baird pays this decree, then they would be bound to reimburse him by accounting for the fund to him. Why not compel them to exonerate him, instead of reimbursement, when all the parties are before the court?

Should he be held to sue them for this fund, and they responsible to him—which may well be doubted under our decisious—he can only have it for the purpose of paying to the legatees. Why require him to sue the executors, and the legatees sue him, when the precise same result can be attained in one suit already brought? With all the facts appearing, and all the parties before the court—subject to its decree—no reason is seen why such complication in the way of litigation should be required, while many reasons appear against it, and we think no such practice can or · ought to be adopted. The result is, that the chancellor erred in decreeing against Z. A. Baird primarily and ·alone, and in fastening the entire liability primarily

upon him, as surviving administrator of W. C. Baird. The estate of Guy T. Gleaves in the hands of his executors, should have been decreed primarily liable for the $3,086, and Z. A. Baird only liable in the event of insolvency of the other.

Assuming, without discussing at length, that J. W. Gleaves and Cauthon and their sureties are before this court for all the purposes of properly adjusting the rights of Z. A. Baird, who has appealed from the decree, and that his appeal, of necessity, bring these parties before this court for this purpose, the question then is, what are the rights of these sureties on the guardian bond of J. W. Gleaves, on the facts before us, against the estate of Guy T. Gleaves, as represented by these parties? Was the money chargable to the executors of Guy T. Gleaves, or was it a proper charge against the guardian alone, after the settlement and receipts in connection with the other facts of the case? If the estate of Guy T. Gleaves was not properly chargable with it, then these sureties have no equity whatever as against his representatives, and so their bill was properly dismissed, and no right of subrogation exists against any one.

The record shows that after the settlement had between Z. A. Baird and J. W. Gleaves, he rendered his account as guardian to the county court, charging himself with the entire sum, as money of his wards, paid out various sums for them, and to one of them, for all of which he was allowed a credit in that settlement, and also in the chancellor's decree in the case of Hamilton, guardian, and Tabler and wife, against J. W. Gleaves and these sureties.

---

---

It is the case of a personal representative having a fund in his hands, which, in such character, he is bound to pay over to a guardian, as an immediate duty. He happens to be that guardian, and so cannot pay himself, except, as a mere form. He therefore simply does it in the only practical way of doing it—by charging the fund to the guardian account, and taking a credit to the administration account for the same sum, and thus the matter is settled. It is an extreme refinement to say this was a fraud, because no money was in fact paid. This was simply because he was both payor and payee—he was compelled both to pay and receive.

The principle given by this court in the case of *Carroll* v. *Booley,* 6 Yer., 220, states the correct rule on this subject. In a case where the administrator had become guardian, "it was laid down as settled law, that for the two years which the law gave the estate to his hands, the administrator would be presumed to hold in that character, yet after that period, the presumptions of law are reversed and he is to be taken to have held as guardian. His sureties as guardian were held to have been liable after the two years. This could only be on the principle that it being his immediate duty to pay over the fund at that period, and nothing else appearing the law fixed the character of the holding. This case has been approved in *Ross* v. *Wharton,* 10 Yer., 102, and *Porter* v. *Moores,* 4 Heis., 29.

In this case a definite series of acts have been done showing that the funds were held in the capacity

in which it was his duty to hold them, and they have been only charged to the proper account in his official capacity as guardian, which account was of record in the proper office, and known, or might have been known, by all the parties. The probabilities are, the sureties in this case, went on the bond as guardian for this very fund, and certainly no natural equities are seen why they should be relieved, and other sureties onerated with the precise burden they have undertaken themselves to be responsible for. There is no evidence, as we have said, to show that J. W. Gleaves had wasted the estate of Guy T. Gleaves, before the settlement made by him—only allegations, which are denied.

It might be very difficult, if not impossible, to maintain the contention of complainants in this case on another ground. The decree of the chancellor, in the case of Hamilton, guardian, v. Adams and Alexander, holds J. W. Gleaves responsible as guardian, for this money, as shown in his hands by his settlement, and this decree is not only not appealed from, but is the basis on which subrogation is now sought, and therefore acquiesced in. Why these parties are not concluded by this decree it is difficult to see. They had the defense that the money was not received in that case, if it was a valid one—interposed it—and yet the decree is permitted to stand. Why is not this *res adjudicata?*

We cannot perceive the wrong that is assumed by the chancellor in this transaction. There is certainly no evidence of any fraudulent intent—and no act, as far as we can see, that in the least degree points to

bad faith. The guardian charges himself with the fund in the character in which he was bound to hold it, and his sureties have undertaken he shall account for the fund, and cannot complain if required to make good that undertaking.

The result is, the chancellor's decree as to Z. A. Baird, is reversed, and complainant's bill dismissed with costs of this and court below.